Matter of Wustrau v Accord Fire Dist. (2021 NY Slip Op 07320)





Matter of Wustrau v Accord Fire Dist.


2021 NY Slip Op 07320


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

529993
[*1]In the Matter of Fred Wustrau, Respondent,
v
Accord Fire District et al., Appellants.

Calendar Date:November 15, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Pritzker, JJ.

Pinsky Law Group, PLLC, Syracuse (Bradley M. Pinsky of counsel), for appellants.
Kornfeld, Rew, Newman & Simeone, Suffern (Scott A. Dow of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the Supreme Court (Schreibman, J.), entered July 22, 2019 in Ulster County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78 and Election Law § 16-106, to, among other things, void an election certificate designating respondent Robert Garrett as a Fire District Commissioner for respondent Accord Fire District.
On December 12, 2017, respondent Accord Fire District (hereinafter the District) conducted an election for the public office position of Fire Commissioner (hereinafter commissioner). An unofficial count of that election showed that a total of 110 voters cast eligible ballots, out of which 56 votes — a majority — were for petitioner, who pursued a write-in campaign, and 54 votes were for respondent Robert Garrett, a candidate whose name was printed on the ballot. However, six ballots in favor of petitioner were disqualified because they contained a misspelled or incomplete version of his name, rendering Garrett the official victor pursuant to an election certificate issued and executed on December 18, 2018 solely by respondent Anna Henebery, the chairperson of the election and secretary for the District.
On January 17, 2018, petitioner commenced this proceeding seeking to, among other things, determine the validity of the disqualified votes, recanvass the ballots and void the election certificate. In their answer, respondents took no position as to the merits of petitioner's claim and, instead, asserted that the proceeding was time-barred pursuant to a 20-day statute of limitations (see Election Law § 16-106), and, on that ground, they moved for dismissal of the petition.[FN1] In April 2018, Supreme Court held that petitioner's filing was facially untimely; however, the court found that petitioner had made out a prima facie case to estop respondents from invoking a statute of limitations defense by sufficiently alleging in his petition acts of misrepresentation by respondents that caused him not to file his lawsuit in a timely fashion. As such, the court denied respondents' motion and instead scheduled a hearing on the merits of the petition.
At the hearing, Supreme Court initially reviewed each of the six contested ballots and determined on the record, with no opposition from respondents, that they were valid and should have been counted in favor of petitioner. The hearing continued on the issue of equitable estoppel, and, when petitioner rested his case, respondents moved for summary judgment finding that petitioner had not met his burden of establishing estoppel, intending to, alternatively, present their own evidence in opposition. The court denied the motion from the bench and adjourned the hearing for respondents to present evidence; however, they instead filed a motion seeking to reargue/reconsider the court's oral denial of their motion on the issue of equitable estoppel and to dismiss the action as time-barred. The court denied the motion in its entirety and the [*2]hearing proceeded, at which respondents presented evidence on the question of equitable estoppel. Ultimately, Supreme Court determined that respondents induced petitioner to refrain from filing a timely action by way of improper conduct, misrepresentations and deception and were therefore barred from invoking a statute of limitations defense. Accordingly, the court granted the petition to the extent that it declared the election certificate void and ordered a recanvassing of all ballots cast in the election. Respondents appeal.
Respondents contend that Supreme Court erred in estopping them from invoking a statute of limitations defense because, in their view, petitioner's reliance on an alleged misrepresentation by Lyle Roebuck, the Chairman of the Board of commissioners of the District (hereinafter the Board), was unreasonable. "It is axiomatic that the doctrine of equitable estoppel cannot generally be invoked against governmental agencies in the exercise of their governmental function. However, estoppel may apply in certain exceptional cases in which there has been a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance thereon" (Matter of Atlantic States Legal Found., Inc. v New York State Dept. of Envtl. Conservation, 119 AD3d 1172, 1173 [2014] [internal quotation marks and citations omitted]; see Matter of Regan v DiNapoli, 135 AD3d 1225, 1228 [2016], lv denied 27 NY3d 913 [2016]). Nevertheless, estoppel will not be invoked where reasonable diligence by a good-faith inquirer would have disclosed the inaccuracy of the information (see Matter of Clear Channel Outdoor, Inc. v Town Bd. of Town of Windham, 9 AD3d 802, 804 [2004]; Thoma v Town of Schodack, 6 AD3d 957, 959 [2004]).
At the hearing on the issue of estoppel, petitioner, an active firefighter, testified that, prior to the subject election, he had served for 10 years as a commissioner. After losing in 2015, and his petition being rejected in 2017, petitioner pursued a write-in campaign. On the evening of the subject election, petitioner personally observed a public count of the ballots, whereat Henebery announced the results for each candidate, including that six ballots for petitioner had been declared invalid. Petitioner immediately protested to Henebery, Commissioner William Farrell and respondents John/Jane Does #1-4, unknown persons involved in the election process, that the contested ballots were legal. Petitioner testified that Farrell told him that respondents would "talk to [their] lawyers and let the lawyers handle it." During the following days and weeks, petitioner asked multiple individuals, including Henebery, Roebuck and Farrell, about the status of the election and was told that "it was still being worked on" and that nothing had been decided.
Petitioner further testified that, on December 20, 2017 at a Board meeting, Roebuck told him that "the lawyers [were] still working on [the election results[*3]]." According to petitioner, at this point, nobody had indicated to him that the election results had been filed with the Town Clerk two days earlier.[FN2] Petitioner also testified that, on January 2, 2018, he went to the office of David Lawrence, a commissioner, and made a similar inquiry, at which time Lawrence contacted the lawyers representing the District. That same evening, Lawrence handed petitioner a copy of an email from the District's lawyers stating that the contested votes should be counted and that petitioner was the winner. The next day, on January 3, 2018, petitioner attended a commissioners organizational meeting, wherein Roebuck announced that Garrett was a commissioner.
Farrell, who served as a commissioner through December 31, 2017, testified on petitioner's behalf and corroborated that, at the December 2017 Board meeting, although it was announced that Garrett was the winner of the election, the Board voted to send the matter to the District's lawyers to make sure everything was legal. At that time, Farrell was aware that the official results had been filed with the Town Clerk. Charles Wyant, another commissioner, corroborated that the Board decided to have the District's lawyers check into the election and that, at that time, he believed that a winner had not been publicly declared "because there was still discussion" regarding the validity of the contested ballots. Wyant also testified that the election winner was not formally announced until the January 2018 Board meeting. Finally, Lawrence testified on petitioner's behalf that the election results had not been determined until the January 2018 meeting, when Roebuck announced that Garrett was a newly-elected commissioner and that, as of the December 2017 meeting, "the election was still under review," which was the information that Lawrence then passed along to petitioner.
For respondents, Henebery testified that, following the ballot count on election night, she announced to a "room full of people," including petitioner, that Garret had won, petitioner had lost and that there were six votes not counted due to misspelling. According to Henebery, petitioner then protested the results and Farrell, who was also in the room, subsequently directed Henebery to place the votes back into the ballot box and stated that the Board would contact its lawyers the next morning to see what should happen. The next morning, Henebery called Roebuck, who, after speaking with the District's lawyers, told her to do a recount, to which she complied accordingly. However, the results did not change, which Henebery notified petitioner by way of a phone call. With the exception of petitioner contacting Henebery two days after the December 2017 meeting and asking her to contact the District's lawyers, which Henebery did not do, Henebery explained that she did not have any other contacts with petitioner and that petitioner's testimony to the contrary "was a lie." Henebery further testified [*4]that, by the January 2018 meeting, Garrett had already been sworn in as a commissioner and that, at that meeting, Roebuck stated that Garrett was the winner and that, if petitioner wanted to protest it, he had to contact an attorney. On cross-examination, Henebery testified that she filed the election results with the Town Clerk on the morning of December 18, 2017. Henebery further attested that, at the December 2017 meeting, she did not indicate that Garrett had been declared a winner, although "everybody knew."
Garrett testified that, on December 12, 2017, Henebery told him he had won the election. Another witness testified that, after witnessing the election recount the day after the election, Henebery called petitioner to tell him he lost.[FN3] Roebuck testified that, following the subject election, he first spoke with petitioner at the December 2017 meeting, where he told petitioner that if he was not happy with the results of the election, he should contact an attorney about protesting the election. During the ensuing executive session at that meeting, Roebuck recalled deciding that "the election was going to stand," with "[petitioner] being the person that lost."[FN4] Roebuck testified that he next personally addressed petitioner at the January 2018 meeting, wherein he welcomed Garrett to the Board and instructed petitioner that he should contact an attorney if he had further protests. On cross-examination, Roebuck testified first that, for the subject election, he did not vote for anybody and that, instead, he put a zero on the ballot; he then testified that he left the ballot blank. However, when Supreme Court informed him that a review of the ballots did not reveal any blank ones, Roebuck again changed his testimony.
Given the foregoing, petitioner established that respondents misrepresented to him that no official election winner had been declared. Although there was conflicting testimony as to what transpired following the election, Supreme Court ultimately resolved this conflicting evidence against respondents. Having closely examined the record, no basis exists to find that determination legally unsound; thus, due deference is accorded to the court's determinations in this regard (see Matter of Meyer v Whitney, 132 AD3d 1062, 1065 [2015], lv denied 26 NY3d 909 [2015]; Matter of Powell v Weyant, 307 AD2d 472, 472 [2003]). As such, petitioner was not just merely told that the election was in the hands of the lawyers, but rather received specific assurances that the election was still under review (compare Donahue-Halverson, Inc. v Wissing Constr. & Bldg. Servs. Corp., 95 AD2d 953, 954 [1983]). These misrepresentations are amplified by the fact that, at the December 2017 meeting, respondents affirmatively failed to disclose that the election results had been officially certified with the Town Clerk two days prior to that meeting. These acts constitute affirmative wrongdoing given that no ambiguity existed — petitioner, in essence[*5], was led to believe that his informal challenge to the six disqualified ballots was being reviewed by the Board, when, in fact, it was not (compare Matter of Kennedy v Zoning Bd. of Appeals of Vil. of Croton-on-Hudson, 78 NY2d 1083, 1085 [1991]).
Moreover, petitioner justifiably relied on these misrepresentations and, as a result, was deterred from timely commencing the instant proceeding. Contrary to respondents' contention that petitioner failed to exercise due diligence in ascertaining the true facts by, for instance, verifying with the Town Clerk whether the election results had been certified, such argument is illusory given that respondents concealed at the December 2017 meeting that the election results had been certified. Additionally, as of January 2, 2018, petitioner was given written documentation that the District's lawyers would render an opinion on the election. In any event, there was no evidence at the hearing that established that petitioner was "aware of enough operative facts" to discover respondents' misrepresentation with reasonable diligence (Lucas-Plaza Hous. Dev. Corp. v Corey, 23 AD3d 217, 218 [2005]), since, although he knew that the election needed to be certified by a specific date, no testimony was adduced that he was aware that a challenge to the unofficial count would not have impacted that certification process. Given the foregoing conclusions, Supreme Court properly estopped respondents from invoking a statute of limitations defense. Respondents' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., J.P., Lynch, Clark and Aarons, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: Petitioner replied that the 20-day statute of limitations was either inapplicable in light of the four-month limitation period provided by CPLR 217 (1) that, in his view, governs here or had not begun to run given certain alleged statutory defects with the certificate of election. Supreme Court ultimately rejected both arguments and neither is raised on appeal.

Footnote 2: We note that the filing of the election results was signed only by Henebery, as chair of the election, rather than by "the chair[person], election inspectors and ballot clerks," as required by Town Law § 175 (5).

Footnote 3: Petitioner denies receiving this phone call.

Footnote 4: Interestingly, Henebery denied this subject having been discussed during executive session at the December 2017 meeting.